**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UPFITTERS, L.L.C.,

    Plaintiff/Counterclaim Defendant,

v.
                                                                       Case No. 3:18-cv-496-J-34PDB

RICHARD K. BROOKING, in his individual
capacity, EDWARD SPENCER ROOKING,
in his individual capacity, BROOKING
INDUSTRIES, INC., and DANA SAFETY
SUPPLY, INC.,

    Defendants/Counterclaim Plaintiffs/
    Third-Party Plaintiffs,

v.

BODIE BRACKEN, AMANDA PIERSING,
and QCU, L.L.C.,

    Third-Party Defendants.

_____

# O R D E R

**THIS CAUSE** is before the Court on Third-Party Defendants Bodie Bracken and Amanda Piersing's motion to dismiss. See Motion to Dismiss Defendants' Second Amended Counterclaims and by Third-Party Defendants Amanda Piersing and Bodie Bracken and Memorandum of Law (Doc. 90; Motion), filed on July 12, 2019. Third-Party Plaintiffs Richard K. Brooking, Edward Spencer Brooking, Brooking Industries, Inc., and Dana Safety Supply, Inc. filed a response in opposition to the Motion on July 31, 2019. See Defendants' Response in Opposition to Motion to Dismiss (Doc. 97; Response). Accordingly, the Motion is ripe for review.

**I.    Procedural History**

Upfitters, L.L.C. initiated this action on April 16, 2018, by filing a Complaint for a Jury Trial and Injunctive Relief (Doc. 1) against Richard K. Brooking (Richard Brooking), Edward Spencer Brooking, Brooking Industries, Inc., and Dana Safety Supply, Inc. (collectively, the Brooking Group), asserting claims for patent infringement, copyright infringement, and breach of contract.[1]  On January 16, 2019, the Brooking Group responded by filing a counterclaim and third-party complaint against Upfitters, Bodie Bracken, Amanda Piersing, and QCU, L.L.C.  See Counterclaims and Third-Party Complaint (Doc. 57).  Upon review, the Court sua sponte issued an Order (Doc. 65) striking the Counterclaims and Third-Party Complaint as an impermissible "shotgun pleading."  Specifically, the Court determined that counts two and three of the Counterclaims and Third-Party Complaint adopted the allegations of all preceding paragraphs, "'causing each count to carry all that came before[.]'"  Id. at 1 (quoting Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1321 & n.11 (11th Cir. 2015)).  As a result, the Brooking Group filed am amended counterclaim and third-party complaint on February 1, 2019, see Amended Counterclaims and Third-Party Complaint (Doc. 66), and the operative second amended counterclaim and third-party complaint on June 25, 2019, see Second Amended Counterclaims and Third-Party Complaint (Doc. 87; Third-Party Complaint).  Bracken and Piersing's Motion followed on July 12, 2019.

---

[1] Upfitters filed its operative Second Amended Complaint (Doc. 53) on December 18, 2018.

## II.     Background[2]

On May 1, 2012, Brooking Industries, Bracken, and Piersing executed an agreement (the May 2012 Agreement) governing "their joint efforts to invent, develop, patent, and sell new products for the public safety marketplace."  See Third-Party Complaint ¶ 16.  "To perform these functions, Brooking Industries and a third party . . . formed an LLC named [PPV], and Bracken and Piersing separately formed . . . Upfitters." Id. ¶ 19. Thereafter, PPV and Upfitters formed QCU "to operate the business venture envisioned by the May 2012 Agreement." Id. ¶ 20.  On December 20, 2012, PPV transferred its ownership interest in QCU, a portion of which PPV transferred to ISP—another LLC owned by Brooking Industries—and the remaining portion PPV transferred to Upfitters.  Id. ¶ 21.  Later, on July 18, 2013, ISP transferred its interest in QCU to Upfitters.  Id. ¶ 38.  "Effective on or about August 23, 2014, QCU terminated the parties' business venture."  Id. ¶ 31.

During their business venture, the parties developed copyrights and patents.  See id. ¶¶ 24-29, 32.  According to the Brooking Group, although Richard Brooking "made significant contributions to the inventions claimed" in the patents, Bracken and Piersing are "erroneously and wrongfully . . . identified as the sole inventors . . . ." Id. ¶ 25, 27. The Brooking Group alleges that "Bracken and Piersing, individually and through Upfitters," are now "wrongfully" asserting these patents and copyrights against the

---

[2] In considering the Motion, the Court must accept all factual allegations in the Third-Party Complaint as true, consider the allegations in the light most favorable to the Brooking Group, and accept all reasonable inferences that can be drawn from such allegations.  Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted).  As such, the recited facts are drawn from the Third-Party Complaint and may differ from those that ultimately can be proved.

Brooking Group "as a basis of their infringement suit in this case." Id. ¶¶ 29, 32.

In conjunction with the transfer of ISP's interest in QCU to Upfitters on July 18, 2013, "QCU executed a Promissory Note to Brooking Industries," and "QCU, ISP, Upfitters, and Brooking Industries executed a Mutual Release and Settlement Agreement." Id. ¶ 36. In the Promissory Note, QCU promised to pay Brooking Industries $44,653.87 by June 20, 2018, for products that QCU had previously purchased from Brooking Industries. Id. ¶ 35, 38. The Brooking Group alleges that QCU has defaulted on the Promissory Note. Id. ¶ 39. In addition, after executing the Promissory Note, QCU continued to purchase products from Brooking Industries. Id. ¶ 40. The Brooking Group alleges that Brooking Industries invoiced QCU for the products and that QCU never objected to the invoice, but QCU has failed to pay the invoice. Id. ¶¶ 41-43; id., Exhibit B: Brooking Industries, Inc. Customer Balance Detail (Doc. 87-2; Invoice).

Importantly, the Brooking Group seeks to pierce the LLC veils of Upfitters and QCU to hold Bracken and Piersing personally liable for QCU's alleged default on the Promissory Note and failure to pay the Invoice. See generally Third-Party Complaint. In doing so, the Brooking Group alleges that QCU is the alter ego of Upfitters, id. ¶ 45, Upfitters is the alter ego of Bracken and Piersing, id. ¶ 55, and QCU is the alter ego of Bracken and Piersing, id. According to the Third-Party Complaint, Upfitters is the parent company and sole member of QCU, and that Bracken and Piersing are the sole members of Upfitters. See Third-Party Complaint ¶¶ 5-6. The Brooking Group further alleges, "upon information and belief," that Upfitters and QCU share common officers and directors; Upfitters provides QCU with its funding to operate; Upfitters dominates QCU to such an extent that QCU lacks an independent existence; Upfitters has used QCU to perpetuate injustice and to

justify its wrongful conduct; QCU is a mere instrumentality of Upfitters; Bracken and Piersing dominate Upfitters to such an extent that Upfitters lacks an independent existence; Bracken and Piersing have used Upfitters and QCU to perpetuate injustice; Upfitters and QCU are severely undercapitalized; Upfitters and QCU do not maintain adequate records or observe organizational formalities; Upfitters' and QCU's assets have been used to pay the personal obligations of Bracken and Piersing; QCU, Bracken, and Piersing comingle assets and affairs; QCU and Upfitters are the mere instrumentalities of Bracken and Piersing; Bracken and Piersing have used Upfitters and QCU to perpetuate injustice, which has damaged the Brooking Group. See id. ¶¶ 45-64. In addition, after Upfitters initiated this lawsuit, Bracken and Piersing "purportedly assigned all of their rights and obligations under the May 2012 Agreement to Upfitters . . . ." Id. ¶ 44.

Based in part on these allegations, the Brooking Group asserts nine claims for relief against Upfitters, QCU, Bracken, and Piersing.[3] As relevant here, the Brooking Group asserts the following three third-party claims against Bracken and Piersing: Breach of Promissory Note – Alter Ego (Count II); Breach of Contract/Account Stated – Alter Ego (Count IV); and Breach of the May 2012 Agreement (Count V). In Count II, the Brooking Group alleges that QCU defaulted on the Promissory Note by failing to pay Brooking Industries the amount due thereunder, and that Bracken and Piersing are personally liable for QCU's wrongful conduct. Id. ¶¶ 69-73. In Count IV, the Brooking Group alleges that QCU failed to pay Brooking Industries for products purchased after the execution of the Promissory Note, and that Bracken and Piersing are personally liable for QCU's wrongful

---

[3] The Brooking Group realleges relevant factual allegations in each third-party claim, see Third-Party Complaint ¶¶ 69, 79, 86, but it appears that only Brooking Industries is a proper plaintiff as to those claims. Indeed, the wherefore clauses of Counts II, IV, and V ask that judgment be entered in favor of Brooking Industries. See id. at 12, 15, 16.

conduct. Id. ¶¶ 79-85. Finally, in Count V, the Brooking Group alleges that Bracken and Piersing breached the May 2012 Agreement and that their "purported assignment of the May 2012 Agreement to Upfitters after this litigation was commenced was an improper and legally ineffective attempt to escape liability." Id. ¶¶ 86-91.

In their Motion, Bracken and Piersing assert several reasons why the third-party claims against them should be dismissed with prejudice. First, they contend that all three counts constitute a "shotgun pleading" and that even "[i]f Count IV is not a shotgun pleading, [it] is too vague to answer." See Motion at 2, 5, 7. Second, Bracken and Piersing assert that Count V is due to be dismissed because they are no longer parties to the May 2012 Agreement in light of the assignment to Upfitters. Id. at 8. Third, Bracken and Piersing argue that Counts II and IV should be dismissed because the Brooking Group's "alter ego theory fails." Id. at 3-4, 6. Fourth, Bracken and Piersing maintain that all claims against them should be dismissed because the Mutual Release and Settlement Agreement "released Bracken and Piersing by contract." Id. at 13. Finally, Bracken and Piersing argue that this Court does not have personal jurisdiction over them under Florida's long-arm statute. Id. at 9-12.

## III. Standards of Review

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet

some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

Additionally, in considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the "plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out

a prima facie case of jurisdiction." See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). Where a defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" See id. (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)). In ruling on a motion to dismiss for lack of personal jurisdiction, a district court has discretion to conduct an evidentiary hearing. See Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988). However, where the court does not conduct a hearing, or where the defendant does not submit evidence challenging jurisdiction, "the plaintiff must present only a prima facie showing of . . . personal jurisdiction." Id. A plaintiff makes a prima facie showing by presenting evidence sufficient to withstand a motion for directed verdict on the issue of personal jurisdiction. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). Thus, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits[.]" Id. (citing Delong Equip. Co., 840 F.2d at 845). This construction in favor of the plaintiff is particularly necessary where, as in the instant case, the jurisdictional questions are intertwined with the merits of a case. See Delong Equip. Co., 840 F.2d at 845.

**IV.  Discussion**

    **A.  Failure to State a Claim**

Bracken and Piersing raise a variety of arguments as to why the third-party claims against them should be dismissed for failure to state a claim. First, Bracken and Piersing argue that the Third-Party Complaint constitutes a "shotgun pleading." See Motion at 2, 5, 7. In particular, they contend that Counts II, IV, and V impermissibly incorporate

irrelevant factual allegations, and therefore, are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Id. (quoting Weiland, 792 F.3d at 1322).[4]  As to the breach of contract claim in Count IV, specifically, Bracken and Piersing argue that the Brooking Group improperly incorporated factual allegations relating to the May 2012 Agreement and the Promissory Note, which makes it impossible for Bracken and Piersing to know which agreement they are accused of breaching. See Motion at 6. Upon consideration, the Court finds these arguments unavailing.

The Brooking Group's original Counterclaim and Third-Party Complaint was, indeed, a shotgun pleading, which this Court struck, sua sponte. In the operative Third-Party Complaint, the Brooking Group does not re-allege the allegations of each proceeding claim into the next like it did in its first pleading, but rather re-alleges a specific set of factual allegations for each claim for relief. See Third-Party Complaint at ¶¶ 59, 79, 86. Contrary to the arguments asserted by Bracken and Piersing, this pleading method did not cause Counts II, IV, and V to contain "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." See Weiland, 792 F.3d at 1322. Even if some of these factual allegations are not necessary to a particular count, they at least appear to be relevant, as the third-party claims are bound to share some factual overlap. The Court declines to require the kind of surgical precision in drafting that Bracken and Piersing demand. Moreover, although Count IV incorporates factual allegations regarding the May 2012 Agreement and the Promissory Note, it is apparent

---

[4] To the extent that Bracken and Piersing also argue that Counts II, IV, and V contain "'a variety of contract and tort claims interwoven in a haphazard fashion,'" see Motion at 2 (quoting Weiland, 792 F.3d at 1320), the Court finds the argument entirely lacking in merit. Indeed, the Third-Party Complaint contains no tort claims.

that the Brooking Group is referring to QCU's alleged failure to pay the Invoice. Indeed, Count IV is labeled "Breach of Contract/<u>Account Stated</u> – Alter Ego." See Third-Party Complaint at 14 (emphasis added). The Brooking Group alleges that Brooking Industries invoiced QCU for $23,103.72 worth of products, QCU has not paid the Invoice, and these products were not covered by the Promissory Note. <u>Id.</u> ¶¶ 80-82. The Brooking Group further alleges that Bracken and Piersing are personally liable for QCU's failure to pay the Invoice, <u>id.</u> ¶ 85, and seeks damages in the amount of the invoice, plus interest and costs, <u>id.</u> ¶ 86. Based on these allegations, it is clear that the Brooking Group is not alleging a breach of the Promissory Note or the May 2012 Agreement in Count IV. As such, Counts II, IV, and V are not subject to dismissal for being impermissibly pled or vague.

Next, Bracken and Piersing assert that Count V is due to be dismissed because they are no longer parties to the May 2012 Agreement. <u>Id.</u> at 8. In Count V, the Brooking Group alleges that Bracken and Piersing breached the May 2012 Agreement by, among other things, "asserting (through their alter ego Upfitters) copyright and patent infringement actions against Brooking Industries, its agents, and licensees on products and works that Bracken, Piersing, and Brooking Industries worked collaboratively to develop." <u>See</u> Third-Party Complaint ¶ 89. Although the Brooking Group acknowledges that Bracken and Piersing assigned their rights and obligations under the May 2012 Agreement to Upfitters after Upfitters initiated this litigation, the Brooking Group alleges that the assignment "was an improper and legally ineffective attempt to escape liability." <u>Id.</u> ¶ 91. <u>See also</u> <u>id.</u> ¶ 57 ("Upon information and belief, Bracken and Piersing have used Upfitters and QCU to perpetuate injustice, and to justify their wrongful conduct, including, but not limited to, assigning their interests in the May 2012 Agreement to Upfitters in an

effort to try to avoid their individual liability."). In moving to dismiss Count V, Bracken and Piersing argue that the Brooking Group failed to offer "evidence that this assignment was anything but lawful and Bracken and Piersing had full rights to do so." See Motion at 10. The Court rejects the suggestion that the Brooking Group must substantiate the allegations of the Third-Party Complaint with evidence at this stage of the proceedings. Instead, the Court must accept the Brooking Group's nonconclusory factual allegations in the Third-Party Complaint as true. See Ashcroft, 556 U.S. at 678. Viewing the facts in the light most favorable to the Brooking Group, as the Court must, the Court finds that the Brooking Group has alleged facts sufficient to state a plausible claim for breach of the May 2012 Agreement against Bracken and Piersing.

Finally, Bracken and Piersing contend that Counts II and IV should be dismissed because the Brooking Group has failed to allege facts upon which the Court could pierce the LLC veils of Upfitters or QCU to hold Bracken and Piersing personally liable for QCU's alleged wrongdoings. See Motion at 3-4, 6. To pierce an entity's liability shield under Oklahoma law,[5] a plaintiff must show "either (1) that the separate corporate existence is

---

[5] This Court has supplemental jurisdiction over the Brooking Group's state law claims in Counts II and IV. As such, the Court must "apply the conflict-of-laws rules of the forum state. Once it has characterized the legal issue, it determines the choice of law rule that the forum state applies to that particular type of issue." Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc., 485 F.3d 1233, 1240 (11th Cir. 2007). Here, Counts II and IV state claims for breach of contract, but they also seek to pierce the LLC veils of Upfitters and QCU so that the Brooking Group can hold Bracken and Piersing personally liable for QCU's alleged breaches. Under Florida's choice-of-law rules, the law of the state of formation applies in determining whether an entity's liability shield is pierced. See Pulte Home Corp. v. Ply Gem Indus., 804 F. Supp. 1471, 1489 (M.D. Fla. 1992) (concluding that law of state of incorporation governs attempts to pierce corporate veil) (citing Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989)); Chatlos Found., Inc. v. D'Arata, 882 So. 2d 1021, 1023 (Fla. 5th Dist. Ct. App. 2004) ("Claims involving 'internal affairs' of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation." (internal quotation and citations omitted). Thus, because QCU and Upfitters are Oklahoma LLCs, see Third-Party Complaint ¶¶ 5-6, the Court applies Oklahoma law in determining whether the Brooking Group has adequately plead facts to show that QCU is the alter ego of Upfitters, and that QCU and Upfitters are the alter egos of Bracken and Piersing. The Court notes, however, that "a claim based on the alter ego theory is not in itself a claim for substantive relief," but instead "a means of imposing liability on an underlying cause of action[.]" See William M. Fletcher, Fletcher Cyclopedia of the Law of Corporations § 41.10. As such, the underlying breach of contract claims may ultimately be governed by Florida law.

a design or scheme to perpetrate fraud, or (2) that [the] corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or alter-ego of the shareholder. In other words, it must appear that one corporation is merely a dummy or sham."[6] King v. Modern Music Co., 33 P.3d 947, 952 (Okla. Civ. App. Div. 4. 2001). See also Fanning v. Brown, 85 P.3d 841, 846 (Okla. 2004) ("Courts may disregard the corporate entity and hold stockholders personally liable for corporate obligations or corporate conduct under the legal doctrines of fraud, alter ego and when necessary to protect the rights of third persons and accomplish justice." (citations omitted)). "[A] corporation may be deemed to be a mere instrumentality [or alter ego] of an individual if (1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation or vice versa, (4) corporate formalities are not followed, or (5) the corporation is merely a sham." Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d 1012, 1018 (10th Cir. 1990) (citations omitted).

Here, the Third-Party Complaint alleges that QCU is the alter ego of Upfitters, and that QCU and Upfitters are the alter egos of Bracken and Piersing. See Third-Party Complaint ¶¶ 45, 55. To support these assertions, the Brooking Group alleges, upon information and belief, that Upfitters and QCU share common officers and directors; Upfitters provides QCU with its funding to operate; Upfitters dominates QCU to such an

---

[6] Courts routinely apply the corporate law doctrine of veil piercing to LLCs. Kaycee Land & Livestock v. Flahive, 46 P.3d 323, 327-28 (Wyo. 2002) ("Most, if not all, of the expert LLC commentators have concluded the doctrine of piercing the veil should apply to LLCs. . . . It also appears that most courts faced with a similar situation—LLC statutes which are silent and facts which suggest the LLC veil should be pierced—have had little trouble concluding the common law should be applied and the factors weighed accordingly." (collecting authority)); Hollowell v. Orleans Reg'l Gen. Hosp. LLC, 217 F.3d 379, 385 n.7 (5th Cir. 2000) ("Commentators also agree that for purposes of piercing the corporate veil, an LLC would be treated like a corporation.").

extent that QCU lacks an independent existence; Upfitters has used QCU to perpetuate injustice; QCU is a mere instrumentality of Upfitters; Bracken and Piersing dominate Upfitters to such an extent that Upfitters lacks an independent existence; Bracken and Piersing have used Upfitters and QCU to perpetuate injustice; Upfitters and QCU are severely undercapitalized; Upfitters and QCU do not maintain adequate records or observe organizational formalities; Upfitters' and QCU's assets have been used to pay the personal obligations of Bracken and Piersing; QCU and Upfitters are the mere instrumentalities of Bracken and Piersing. See id. ¶¶ 45-64. Viewing these allegations in the light most favorable to the Brooking Group, as the Court must, the Court finds that the Brooking Group has alleged sufficient factual information to support its claim for alter-ego liability.

To the extent Bracken and Piersing find fault with the Third-Party Complaint because it contains allegations based on "information and belief," See Motion at 3-4, this argument fails. "[T]he mere fact that a complaint includes allegations asserted on information and belief is not, in and of itself, a basis for dismissal." Latele Television C.A. v. Telemundo Commc'ns Grp., LLC, Case No. 12-cv-2539, 2013 WL 1296314, at *11 (S.D. Fla. March 27, 2013) (citing Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)). Indeed, "[t]he Twombly plausibility standard, which applies to all civil actions, see Iqbal, 129 S.Ct. at 1953, does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant, see, e.g., Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008), or where the belief is based on factual information that makes the inference of culpability plausible, see Iqbal, 129 S. Ct. at 1949 ('A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.')." Arista, 604 F.3d at 120. In short, the Court is of the view that the claims raised against Bracken and Piersing in the Third-Party Complaint are sufficiently pled, Bracken and Piersing have received adequate notice of the claims against them, and they can frame an appropriate response to Counts II, IV, and V as drafted. As such, to the extent Bracken and Piersing seek dismissal of these counts for failure to state a claim, the Motion is due to be denied.

### B. Mutual Release and Settlement Agreement

Next, Bracken and Piersing argue that all three third-party claims against them should be dismissed because they were waived as part of the Mutual Release and Settlement Agreement executed by QCU, ISP, Upfitters, and Brooking Industries on July 18, 2013. See Motion at 15. The relevant portion of the Mutual Release and Settlement Agreement provides as follows:

> <u>That for and in consideration of the settlement agreement as herein contained</u>, the parties hereto mutually release and forever discharge one another, . . . and any and all other persons, firms or corporations with whom any of the former have been or now or may be hereinafter affiliated, of and from any and all past, present or future claims, demands, obligations, actions, causes of actions, rights, damages, costs, expenses and compensation of any nature whatsoever, whether based on tort, contract or other theory of recovery, and whether for general, compensatory, special, consequential or punitive damages which QCU, Upfitters or I.S.P., their agents, partners, owners, shareholders, investors, insurance carriers if any, now have or may hereinafter acquire on account of or in any way growing out of the acts or omissions which are the subject matter of the formation and operation of QCU, L.L.C., Upfitters, L.L.C. and/or I.S.P., L.L.C., including without limitation any and all known or unknown claims which have resulted or which may result from the alleged acts, commissions, omissions or breaches of QCU, Upfitters and/or I.S.P.

See Second Amended Complaint, Exhibit 24: Mutual Release and Settlement Agreement (Doc. 53-24; Settlement Agreement) (emphasis added) at 3.[7] In its Response, the Brooking Group contends that the consideration referred to in the first sentence of the Settlement Agreement is QCU's "payment of $44,653.87 (by June 21, 2018) required by the contemporaneously executed promissory note." See Response at 15. Significantly, in the Third-Party Complaint, the Brooking Group alleges that QCU defaulted on the Promissory Note by failing to pay that amount. See Third-Party Complaint ¶¶ 65-68. As such, Bracken and Piersing's argument that the claims against them are subject to the release in the Settlement Agreement turns on factual disputes inappropriate for the Court to determine on a motion to dismiss. Accordingly, the Court will not dismiss the third-party claims on the basis of the Settlement Agreement.

### C. Personal Jurisdiction

Finally, Bracken and Piersing argue that they "are not subject to jurisdiction under the Florida Long-Arm statute."[8] Motion at 13. Florida's long-arm statute provides in pertinent part:

> (1)(a) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

---

[7] The Brooking Group did not attach the Settlement Agreement to the Third-Party Complaint.

[8] To determine whether personal jurisdiction exists over nonresident defendants, courts ordinarily engage in a two-part inquiry. See Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004). First, courts determine "whether the exercise of jurisdiction is appropriate under [Florida]'s long-arm statute." Id. (citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996)). Second, courts consider whether exercising personal jurisdiction over the nonresident defendants is consistent with "the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Sculptchair, Inc., 94 F.3d at 626). Here, Bracken and Piersing do not argue that exercising personal jurisdiction over them is inconsistent with the Due Process Clause.

> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> . . .
>
> 7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
>
> . . .
>
> 9. Entering into a contract that complies with s. 685.102.

Fla. Stat. § 48.193.

The Brooking Group contends that the Florida long-arm statute permits the exercise of personal jurisdiction over Bracken and Piersing because Bracken and Piersing were carrying on a business in Florida, breached a contract in Florida, and entered into a contract that complies with Florida Statutes section 685.102. See Response at 9-15. In support of its assertion that Bracken and Piersing were carrying on a business in Florida, the Brooking Group alleges the following:

> This Court has personal jurisdiction over Bracken and Piersing because they have transacted business in the state of Florida, collaborated with Richard Brooking, a citizen of Florida, and his agents regarding the design and developments of products that were then sold to Bracken and Piersing and shipped out of Florida, purchased numerous quantities of product from Brooking Industries produced in Florida, collaborated with Richard Brooking and his agents regarding the design and content of certain products' instructions that were then sold with certain products out of Florida, conducted a joint business venture and executed at least one contract with Brooking Industries (a Florida Corporation), with such joint business venture and contract forming the basis for this lawsuit. Bracken and Piersing have only just recently purportedly assigned their rights under that contract to Upfitters.

Id. ¶ 13. In addition, the Brooking Group argues that Bracken and Piersing "breached the May 2012 Agreement by bringing suit against Brooking Industries in Florida, the effects of which will obviously be felt by Brooking Industries in Florida." Response at 14.

In challenging the Court's personal jurisdiction over them, Bracken and Piersing argue only that the "assertions concerning Bracken [and] Piersing['s] business activities in Florida are false and unsupported." Motion at 13. They maintain that Brooking Industries did business with QCU, not Bracken or Piersing. Id. However, this argument goes to the merits of the Brooking Group's Third-Party Complaint, and Bracken and Piercing have not submitted any evidence challenging these allegations. Instead, they have chosen to rely solely on the allegations of the Third-Party Complaint. As such, the Brooking Group need "present only a prima facie showing of . . . personal jurisdiction." Delong, 840 F.2d at 845. Taking the allegations of the Third-Party Complaint as true, the Court determines that the Third-Party Complaint sufficiently alleges that Bracken and Piersing were conducting business in Florida sufficient to satisfy section 48.193(1)(a)(1.) and are alleged to have breached a contract in Florida sufficient to satisfy section 48.193(1)(a)(7.).[9]

Accordingly, it is

**ORDERED**:

---

[9] The Court is of the view that it is unlikely that section 48.193(1)(a)(9.) provides an alternate basis for personal jurisdiction given the language in the May 2012 Agreement. Nevertheless, given that the Third-Party Complaint contains sufficient allegations to satisfy sections 48.193(1)(a)(1.) and (7.), the Court need not consider whether section 48.193(1)(a)(9.) provides an alternative basis for personal jurisdiction.

1. The Motion to Dismiss Defendants' Second Amended Counterclaims and by Third-Party Defendants Amanda Piersing and Bodie Bracken and Memorandum of Law (Doc. 90) is **DENIED**.

2. Third-Party Defendants Amanda Piersing and Bodie Bracken shall respond to the Third-Party Complaint (Doc. 87) in accordance with the requirements of Rule 12, Federal Rules of Civil Procedure.

**DONE AND ORDERED** in Jacksonville, Florida on February 27, 2020.

*/s/ Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

lc23
Copies to:
Counsel of Record